UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Elliott Auto Supply Co., Inc., *d/b/a Factory Motor Parts*, | File No. 23-cv-2990 (ECT/DJF) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Fisher Auto Parts, Inc., | |
| Defendant. | |

---

Barbara P. Berens and Kari S. Berman, Berens & Miller, PA, Minneapolis, MN, for Plaintiff Elliott Auto Supply Co., Inc.

Patrick Dillard, Kate Carolyn Ashley, and Ryan David Frei, McGuireWoods LLP, Richmond, VA, and Thomas H. Boyd and Kyle R. Kroll, Winthrop & Weinstine, P.A., Minneapolis, MN, for Defendant Fisher Auto Parts, Inc.

---

The parties in this diversity case are competing aftermarket automotive parts businesses. Plaintiff Elliott Auto Supply Co., d/b/a Factory Motor Parts—who, following the parties' lead, will be referred to as "FMP"—alleges that Defendant Fisher Auto Parts, a Virginia-based corporation, used confidential information obtained through a bankruptcy asset auction in Texas to poach FMP's employees and business in Ohio, Virginia, Pennsylvania, and New York.

Fisher has moved to dismiss the suit for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for improper venue under Rule 12(b)(3), and it seeks to have venue transferred to the United States District Court for the Western District of

Virginia. The Rule 12(b)(2) motion will be granted because the record evidence, construed in a light most favorable to FMP, does not show that Fisher had or maintained contacts with Minnesota sufficient to warrant the exercise of personal jurisdiction over Fisher in this District. The case will not be transferred as Fisher requests because it is not clear whether FMP would pursue the case in the Western District of Virginia.

I

FMP is incorporated under Minnesota law and maintains its principal place of business in Eagan, Minnesota. Compl. [ECF No. 1] ¶ 1. Before the events leading to this dispute, FMP had more than 200 retail store locations in 19 states, including 25 locations in Minnesota. *Id*. ¶ 8–9; ECF No. 28 ¶ 4.

Fisher is incorporated under Virginia law and maintains its principal place of business in Staunton, Virginia. Compl. ¶ 2. Fisher has some 423 retail store locations in the United States. *Id*. ¶ 3. "Ohio is the state in which Fisher has the greatest number of locations, with 73 locations, about 17% of the total number of Fisher's locations." *Id.* Fisher has no employees, stores, warehouses, or offices in Minnesota. ECF No. 13 ¶ 6.

In 2023, FMP and Fisher each bid on the assets of IEH Auto Parts Holding LLC in an auction held through IEH's Chapter 11 proceeding in the United States Bankruptcy Court for the Southern District of Texas. ECF No. 28 ¶ 10–11. To receive due-diligence information about the potential acquisition of IEH's assets through the auction, the Bankruptcy Court required would-be bidders to provide "an executed [non-disclosure agreement] on terms acceptable to [IEH]." *In re IEH Auto Parts Holding LLC*, No. 23-90054 (CML), Dkt. No. 208 at 11 (Ex. A) (Bankr. S.D. Tex. Mar. 10, 2023). Signatories

2

to the non-disclosure agreement agreed not to use or disclose IEH's confidential information except in "consideration of whether to enter into" the potential acquisition of IEH's assets. *Id*. Ex. A, Schedule 1 ¶ 2. Signatories also agreed not to directly or indirectly solicit or hire IEH's employees for a certain period after signing the non-disclosure agreement. *Id*. ¶ 3.

FMP signed a non-disclosure agreement, *see* Compl. Ex. 1, and FMP alleges that Fisher signed a substantially similar non-disclosure agreement. *Id*. ¶ 23; *see* ECF No. 28 ¶ 10. FMP alleges that IEH shared confidential information with Fisher that enabled Fisher to learn "the identity, current compensation, and positions of employees at . . . IEH's locations being auctioned off," "sales and revenue information regarding IEH customers," and the "identity of IEH potential customers." Compl. ¶¶ 25–26.

The IEH asset auction occurred on May 10, 2023. Compl. ¶ 28. Fisher and its co-bidder, Parts Authority, submitted the high bid for 163 non-Minnesota IEH locations; FMP was the second-highest bidder. *Id*.; ECF No. 28 ¶¶ 11, 14. Fisher "did not bid on any lots that included IEH's stores or assets in Minnesota." ECF No. 13 ¶ 15.

Fisher's bid fell through. At a bid-approval hearing in the Bankruptcy Court on May 19, 2023, "IEH's counsel revealed that it had come to light . . . that Fisher and Parts Authority had circumvented the auction bidding process, raising questions about their good faith." Compl. ¶ 29; ECF No. 28 ¶ 13. IEH's counsel reported to the Bankruptcy Court that "requests and inside information in connection with the bidding had been communicated between one or more persons at IEH on one hand, and Fisher and Parts Authority on the other hand," but that this information was not made available to other

3

bidders. Compl. ¶ 30. As a result, the Bankruptcy Court rejected the Fisher/Parts Authority bid, and they were disqualified from participating in the auction. *Id.* ¶ 33. As the second highest bidder, FMP was next in line to acquire the IEH locations on which Fisher and Parts Authority initially bid. *Id*. ¶ 34.[1]

On May 19, 2023, the Bankruptcy Court approved FMP as the winning bidder for these 163 IEH locations. *Id*. ¶ 35. FMP closed on these locations on June 12, 2023. ECF No. 28 ¶ 16. FMP hired former IEH employees who worked at these locations. Compl. ¶¶ 36–38; ECF No. 28 ¶ 15. Once hired, the employees were subject to FMP's employee confidentiality obligations and non-disclosure agreements. Compl. ¶¶ 39–43.

After FMP closed on the transaction, Fisher inquired three times about purchasing some of FMP's newly acquired locations, but no call led to an acquisition or agreement: (1) On June 12, 2023, Fisher President Herbert Godschalk telephoned FMP's Executive Vice President Todd Heldt. ECF No. 34 ¶¶ 2–3; ECF No. 28 ¶16. Godschalk asked "if FMP would be willing to sell any of the locations that FMP had acquired," and Heldt declined. ECF No. 28 ¶16. (2) On July 14, 2023, Godschalk returned a call he had received from FMP Senior Vice President of Sales Clay Johnson. ECF No. 34 ¶¶ 4–5. During this call, Godschalk asked whether "FMP would be willing to sell any of the locations that FMP had acquired in the IEH bankruptcy auction." ECF No. 27 ¶ 3; *see* ECF No. 34 ¶¶ 4–6. Though Johnson told Godschalk he "would get back to him about his inquiry," ECF No.

---

[1] Fisher disputes that its Bankruptcy Court conduct was improper. For purposes of this motion, however, the allegation that Fisher obtained information that was not made available to other bidders will be accepted as true, and the Bankruptcy Court's resolution of the matter will not be second-guessed or revisited.

4

27 ¶ 3, the record does not show whether this occurred. (3) On July 18, 2023, Johnson called Bo Fisher, one of Fisher's owners. ECF No. 33 at 1 & ¶ 7. During this call, Bo Fisher asked Johnson "if FMP would be willing to sell any of the locations that FMP had acquired from IEH." ECF No. 27 ¶ 4. Johnson responded that FMP "currently planned to operate those locations," but FMP would "keep Mr. Fisher's request in mind." *Id.*

FMP's core allegation in this case is that Fisher used confidential information "obtained either in the bankruptcy bidding process" or from "confidential, inside information that Fisher had otherwise wrongfully obtained from one or more persons inside IEH" to "hire away" a significant number of employees from FMP's newly acquired Pennsylvania, New York, and Ohio locations. Compl. at 2; *see id.* ¶¶ 45–46. FMP points specifically to Fisher's hiring of FMP employees Glenn Dawson, a Dayton, Ohio district manager, and Dan Robinson, a New York location manager, as examples of this conduct. *Id.* at 2–3. FMP alleges that Fisher used confidential information Robinson and Dawson acquired during their time at FMP, along with information Fisher acquired during the IEH bidding process, to "steal" additional FMP employees and customer lists. *Id.* ¶¶ 44–59. FMP alleges it lost "most or all of [its] customers" and "all of the other FMP employees" at its Ohio location, forcing that location to close. *Id.* ¶ 48; *see* ECF No. 28 ¶ 17.

FMP asserts three claims against Fisher: common-law tortious interference with prospective and ongoing economic advantage, Compl. ¶¶ 64–75 (Count I); misappropriation of trade secrets / confidential information under Minn. Stat. § 325C.01 *et seq.*, *id.* ¶¶ 76–84 (Count II); and common-law tortious interference with FMP's existing and prospective business relations, *id.* ¶¶ 85–92 (Count III).

II

"Personal jurisdiction . . . is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (second alteration in original) (citation and internal quotation marks omitted). "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citations omitted). "To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant." *Id.* (citations omitted). "But where, as here, the parties submit affidavits to bolster their positions on the motion, and the district court relies on the evidence, the motion is in substance one for summary judgment." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (citation omitted). At this summary-judgment-equivalent stage, a case should not be dismissed for lack of personal jurisdiction "if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support a conclusion that the exercise of personal jurisdiction over [the defendant] is proper." *Id.* (citations omitted).

The issue boils down to determining whether the exercise of personal jurisdiction over Fisher would satisfy constitutional due process. *See DURAG Inc. v. Kurzawski*, No. 17-cv-5325 (ECT/HB), 2020 WL 2112296, at *3 (D. Minn. May 4, 2020). Due process requires that a defendant have sufficient "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and

6

substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citations and internal quotation marks omitted). This means "actions by the defendant" itself must "create a substantial connection with the forum [s]tate" and provide "fair warning" to the defendant that it may be subject to jurisdiction there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985) (citations and internal quotation marks omitted); *accord, e.g., Creative Calling Sols.*, 799 F.3d at 980 (defendant's contacts must permit it to "reasonably anticipate being haled into court" in the foreign state (citation omitted)). The "fair warning" requirement will be met if a defendant has "purposefully directed [its] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472–73 (citations and internal quotation marks omitted).

Our Eighth Circuit Court of Appeals has identified five factors that district courts are to consider in determining whether a defendant has sufficient minimum contacts with the forum state to justify a finding of personal jurisdiction: (1) the nature and quality of contacts with the forum state; (2) the quantity of those contacts; (3) the relationship between the cause of action and the contacts; (4) the state's interest in providing a forum for its residents; and (5) the convenience to the parties. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). The first three factors are of primary importance. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citation omitted). "In determining whether there is personal jurisdiction, the courts consider the defendant's contacts with the forum in the aggregate, not individually; they look at the totality of the

circumstances." *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995) (citation omitted).

Begin with the parties' positions. The Complaint addresses personal jurisdiction over Fisher in one paragraph, alleging:

> This Court has personal jurisdiction over Fisher pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and the Minnesota long-arm statute, Minn. Stat. § 543.19, subd. 1, which permit the Court to exercise personal jurisdiction over Fisher, a foreign corporation, because Fisher has engaged in tortious conduct outside Minnesota which has irreparably harmed and also caused injury and damage in Minnesota to FMP, a Minnesota corporation headquartered in Minnesota. Further, it is reasonably foreseeable that Fisher's egregious misconduct towards FMP would irreparably harm, injure, and damage FMP in Minnesota.

Compl. ¶ 5. This allegation tracks the "effects test" described in *Calder v. Jones*, 465 U.S. 783 (1984), *see Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 931 (8th Cir. 2023) (describing *Calder's* effects test), implying that FMP's personal-jurisdiction theory depends only on applying *Calder*'s effects test to Fisher's activities.

Though the Complaint appears exclusively directed at the *Calder* effects test, the parties' submissions are directed to both a typical minimum-contacts analysis and the *Calder* effects test. FMP's front-line position is that Fisher's direct Minnesota contacts would enable a reasonable factfinder to conclude that a Minnesota court might properly exercise personal jurisdiction over Fisher. *See* ECF Nos. 26–29. Fisher submits declarations and other materials to show it lacks meaningful direct contacts with Minnesota. ECF Nos. 13, 32–34.

Answering the personal-jurisdiction question here thus begins with a typical minimum-contacts analysis. If that analysis does not show the presence of personal jurisdiction over Fisher, it will be necessary to apply the *Calder* effects test. Again, Fisher's motion to dismiss for lack of personal jurisdiction must be granted unless the parties' submissions—construed in a light most favorable to FMP—show that Fisher's actions created a substantial connection with Minnesota and provided fair warning to Fisher that it might be subject to jurisdiction here. *Burger King Corp.*, 471 U.S. at 472–73; *Creative Calling Sols.*, 799 F.3d at 979–80.

(1) The nature and quality of Fisher's Minnesota contacts cannot reasonably be construed to support the exercise of personal jurisdiction over Fisher. Fisher is a Virginia corporation with no employees, offices, stores, warehouses, or distribution centers in Minnesota. ECF No. 13 ¶¶ 5–6. It is not registered to do business in Minnesota. *Id*. ¶ 8. It does not regularly ship or deliver products into Minnesota. *Id*. ¶ 7. It has not solicited customers, directed marketing efforts, or engaged in recruiting efforts in Minnesota. *Id*. ¶¶ 9–11. It has not hired or recruited FMP employees who were working in Minnesota. *Id*. ¶¶ 12–13. By FMP's account, any dispute-related activities happened outside of Minnesota and were related to FMP's newly acquired locations in New York, Ohio, and Pennsylvania. Compl. at 2–3; ECF No. 28 ¶¶ 17–18.[2]

---

[2] There is no discernible basis to tie Fisher's involvement in the bankruptcy auction to any jurisdiction-related Minnesota contacts. The evidence is undisputed that Fisher did not conduct due diligence or bid on any lots that included IEH locations or assets in Minnesota. ECF No. 13 ¶ 15.

FMP identifies four contacts that it says may be construed to support personal jurisdiction: the three telephone calls described above in which Fisher representatives Godschalk and Bo Fisher inquired regarding Fisher's potential acquisition of former IEH locations, and one in-person visit Bo Fisher made to FMP's Minnesota headquarters in 2017. Whether considered separately or together, these facts lack a nature or quality that might reasonably be construed to justify the exercise of personal jurisdiction over Fisher in Minnesota. It is not clear whether the telephone calls had a Minnesota connection. FMP's participants in the calls do not say that they were in Minnesota when the calls occurred. *See* ECF No. 27 ¶¶ 3–4; ECF No. 28 ¶ 16. Regardless, the calls' substance lacked any demonstrated Minnesota connection. The calls concerned former IEH locations, but no evidence shows that Fisher inquired about Minnesota locations, and Godschalk's testimony that "Fisher was not interested in purchasing any locations in Minnesota, and that [this subject] was never broached or discussed," ECF No. 34 ¶ 6, is unrebutted. Bo Fisher's 2017 Minnesota visit doesn't add anything. It occurred several years before the transactions giving rise to this case. It was made on behalf of a separate entity, Federated Auto Parts Distributors, Inc., a "large buying group and distribution network incorporated and headquartered in Virginia," "to explore whether [FMP] was interested in becoming a member of Federated." ECF No. 33 ¶¶ 2–6. And it was quite brief. Bo Fisher was "on the ground in Minnesota for less than six hours." *Id*. ¶ 2.

(2) The record cannot reasonably be construed to show that Fisher had a substantial number of Minnesota contacts. At most, it was the four contacts just discussed. By any reasonable measure, that is not a substantial number.

(3) A relationship between FMP's causes of action and Fisher's four Minnesota contacts is not apparent. FMP's claims arise from Fisher's participation in the bankruptcy court auction in Texas, Fisher's Virginia-based business activities, and its actions in connection with FMP's operations in Ohio, Pennsylvania, Virginia, and New York. Compl. at 2–3. It is difficult to understand how Fisher's Minnesota contacts might establish an element, or otherwise feature in FMP's prosecution, of its claims.

(4) & (5) "[T]he better understanding of the Eighth Circuit's statements that the last two factors are 'not determinative' or 'not dispositive' is that those factors cannot establish jurisdiction when there are not otherwise minimum contacts with the forum." *Blue Cross & Blue Shield of N.C. v. Rite Aid Corp.*, 519 F. Supp. 3d 522, 534 n.3 (D. Minn. 2021). If they could affect the outcome, the last two factors do not favor personal jurisdiction so strongly as to overcome the absence of a substantial connection between Fisher and Minnesota.

As is usually the case, measuring Minnesota's interest in providing a forum for FMP is an inexact science. FMP is incorporated in and maintains its principal place of business in Minnesota, Am. Compl. ¶ 1, and Minnesota has an interest in providing a litigation forum for FMP. *See K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 595 (8th Cir. 2011). That interest may not be so strong when, as here, the litigation-provoking activities occurred in four other states. But whatever its precise extent here, Minnesota's interest "cannot make up for the absence of minimum contacts." *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 525 (8th Cir. 1996).

Likewise, the convenience to the parties of a Minnesota forum does not justify concluding there is personal jurisdiction over Fisher. Minnesota is a convenient forum for FMP, but not in every respect. As pleaded, FMP's claims stemmed from Fisher's actions in Virginia and all occurred outside of Minnesota, at FMP's newly acquired locations in Ohio, Pennsylvania, Virginia, and New York. Compl. at 2–3. Thus, discovery must occur in those states, and trial witnesses and exhibits would come from there as well. Minnesota is not a convenient forum for Fisher.

(5) The *Calder* "effects test" is an "additional factor" to be considered in intentional-tort cases. *Kendall Hunt Publ'g Co. v. The Learning Tree Publ'g Corp.*, 74 F.4th 928, 931 (8th Cir. 2023). As our Eighth Circuit Court of Appeals has described it, the *Calder* effects test requires a plaintiff to show the presence of three elements: (1) that a defendant's acts were intentional; (2) that the acts "were uniquely or expressly aimed at the forum state"; and (3) that the acts "caused harm, the brunt of which was suffered—and which the defendant knew likely was to be suffered—[in the forum state]." *Id.* (quoting *Brothers and Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 954 (8th Cir. 2022)). The Eighth Circuit "construe[s] the *Calder* effects test narrowly" in the sense that "mere effects in the forum state are insufficient to confer personal jurisdiction." *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010).

Here, the record cannot reasonably be construed to show anything more than "mere effects" in Minnesota.[3] *Calder*'s second element requires that a defendant deliberately

---

[3] It appears undisputed that FMP's tortious interference and misappropriation allegations fall in the intentional-tort category, satisfying the first *Calder* element.

create "contacts with the forum State itself," not merely "contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*. at 286; *see also WTAS, LLC v. West Tenn. Air Serv., LLC*, No. 23-cv-2015 CJW-MAR, 2023 WL 3778716, at *4, 6–7 (N.D. Iowa Apr. 24, 2023). Here, FMP has not shown that Fisher deliberately created Minnesota contacts to carry out its alleged misappropriation of FMP's confidential information or tortious interference with FMP's business relations or ongoing economic advantage. By all accounts, Fisher's suit-provoking activities all occurred in states other than Minnesota, and nothing was "uniquely or expressly aimed" at Minnesota. *Kendall Hunt Publ'g Co.*, 74 F.4th at 931; *Ecolab Inc. v. IBA, Inc.*, No. 22-cv-479 (ECT/DTS), 2023 WL 7091853, at *7 (D. Minn. Oct. 26, 2023). All that remains is FMP's argument that Fisher knew FMP was located in Minnesota and knew FMP would be injured in Minnesota as a result of Fisher's outside-of-Minnesota acts. This is insufficient to confer jurisdiction. *See Walden,* 571 U.S. at 290, ("[M]ere injury to a forum resident is not a sufficient connection to the forum."); *see also Ecolab*, 2023 WL 7091853, at *7.

\*

When a federal district court determines it lacks personal jurisdiction over defendants and the "plaintiff seriously intends to press [its] claim," the result should be an order transferring the case to an appropriate judicial district rather than outright dismissal. *Thompson v. Ecological Sci. Corp.*, 421 F.2d 467, 470 n.4 (8th Cir. 1970); *see also Am.*

13

*Registry of Radiologic Technologists v. Bennett*, 655 F. Supp. 2d 944, 946 (D. Minn. 2009) ("Although the Court lacks personal jurisdiction over Defendants, it may transfer this action to any other district in which it could have been brought, if justice so requires."); *Ready 4 A Change, LLC v. Sourcis, Inc.*, No. 18-cv-1341 (ECT/ECW), 2019 WL 252028, at *5 (D. Minn. Jan. 17, 2019).  Consistent with these rules, Fisher requested that the case be transferred to the Western District of Virginia, the state in which it is incorporated and where its principal place of business is located.

      The problem is that FMP's litigation intentions at this point are not clear.  No doubt FMP believes it has suffered substantial damages and possesses viable legal claims.  However, in response to Fisher's motion, FMP only defended its right to bring this case in Minnesota.  FMP did not, for example, identify a judicial district to which it would prefer the case be transferred, and its objections to the Western District of Virginia left considerable doubt regarding whether FMP would prosecute the case if that were its only venue option.  In this circumstance, the better choice is to dismiss the case outright, leaving FMP the option to re-commence the case, if at all, in a forum of its choosing.  If FMP pursues that course in a forum other than the Western District of Virginia, Fisher obviously retains the ability to object on personal jurisdiction and venue grounds or to seek a convenience- and interest-of-justice-based transfer under 28 U.S.C. § 1404(a).

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant Fisher Auto Parts, Inc.'s Motion to Dismiss for Lack of Jurisdiction and Improper Venue, or, in the Alternative, Motion to Transfer/Change Venue [ECF No. 9] is **GRANTED**.

2. This action is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 12, 2024                s/ Eric C. Tostrud
                                        Eric C. Tostrud
                                        United States District Court